GUNTER, ATTORNEY GENERAL OF THE STATE OF SOUTH CAROLINA, v. ATLANTIC COAST LINE RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 88. Argued December 1, 4, 1905.—Decided January 15, 1906.

A suit against state officers to enjoin them from enforcing a tax alleged to be in violation of the Constitution of the United States is not a suit against a State within the prohibition of the Eleventh Amendment.

While a State may not, without its consent, be sued in a Circuit Court of the United States, such immunity may be waived; and if it voluntarily becomes a party to a cause and submits its rights for judicial determination it will be bound thereby.

An appearance "for and on behalf of the State" by the Attorney General, pursuant to statutory provisions, in an action brought against county officers, but affecting state revenues, in this case amounted to a waiver by the State of its immunity from suit; and such immunity could not be invoked in an ancillary suit subsequently brought against the successors of the original defendants to enforce the decree.

A decree of the Circuit Court of the United States, having jurisdiction of the cause and in which the State appeared, that a charter exemption existed in favor of a railroad company by virtue of a contract within the meaning of the impairment of obligation clause of the Federal Constitution is binding upon the State as to the existence and effect of the contract during the period of exemption, and the rule that a decree enjoining the collection of a tax is not res judicata as to the right to collect for a subsequent year does not apply.

Neither the Eleventh Amendment nor § 720, Rev. Stat. control a court of

the United States in administering relief where it is acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction; nor is a Circuit Court debarred from enforcing its decree by ancillary suit in equity restraining improper prosecutions of actions in the state courts because there is an adequate remedy at law by interposing defenses in those actions.

The rule that the collection of a tax should not be enjoined unless the amount admitted to be due is tendered does not apply where the amount due is for a period not covered by the injunction or affected by the decree.

THE facts are stated in the opinion.

*Mr. W. F. Stevenson* for plaintiff in error:

Conferring the powers, rights and privileges of the North-eastern Railroad Co., upon the Cheraw and Darlington Railroad Co. did not confer an exemption from taxation enjoyed by the former on the latter. *Phœnix Ins. Co.* v. *Tennessee,* 161 U. S. 171, and cases cited; *Tucker* v. *Ferguson,* 22 Wall. 527.

The consideration for the alleged contract, to wit, the building of the road in pursuance of the same, being now admitted to be a myth, the exemption if granted, was a gratuity and was repealed by the constitution of 1868, and as only litigated questions are *res judicata* in a subsequent suit on the new cause of action, and as the consideration of the contract and its existence was not contested in the Pegues case, we are at liberty to make these questions. There can be no contract without a consideration and in this case there was no consideration. See Cooley Const. Lim. § 149, 335; *Wisconsin R. R. Co.* v. *Supervisors,* 93 U. S. 595; *Newton* v. *Commissioners,* 100 U. S. 548.

If there was an exemption it was a mere gratuity which could be revoked at any time. Section 1, art. ix and § 2, art. xii, Const. 1868, S. Car.; *Tomlinson* v. *Jessup,* 15 Wall. 454.

As to *res adjudicata, Humphrey* v. *Pegues,* 16 Wall. 244, decided only one question, that the act conferred all privileges held by the Northeastern under the acts of 1851 and 1855.

The questions in this case were not litigated. The road was not built pursuant to the exemption and therefore there was no contract and the exemption is repealable. The word "privileges" in a statute making another statute enforceable does not

carry the exemption contained in that statute. Appellant is not estopped because they might have been litigated. This is a suit for taxes for different years from those involved in the Pegues case. *Keokuk & W. R. Co.* v. *Missouri,* 152 U. S. 301; *Cromwell* v. *County of Sac,* 94 U. S. 351; *Louisville Railway* v. *Wilson,* 138 U. S. 501; *Wilmington R. R. Co.* v. *Alsbrook,* 146 U. S. 279; *Nesbit* v. *Riverside,* 144 U. S. 610; *Willoughby* v. *Railroad Co.,* 52 S. Car. 172.

The rule in South Carolina is that the question must have been adjudicated in a former suit in order to estop the parties from making it in the subsequent proceeding. *Henderson* v. *Kenner,* 1 Rich. Law, S. Car. 474; *Hart* v. *Bates,* 17 S. Car. 35; *Jones* v. *Massey,* 14 S. Car. 307; *Duren* v. *Kee,* 41 S. Car. 174; *McMakin* v. *Fowler,* 34 S. Car. 286.

The State cannot be estopped by a judgment against its officers or by any judgment where it has not voluntarily submitted to the jurisdiction as a result of legislative authority (except of course in an original proceeding in the United States Supreme Court), and to hold that a judgment against two tax collectors represented by the Attorney General bound the State so that her attorneys could not be allowed to contend in court for her rights, would be subjecting every State to the process of every court which could get personal jurisdiction of her officers as effectually as if she could be sued in her own name. Amendment XI, Const. U. S.

If Pegues indirectly sued the State, the court was without jurisdiction and the judgment was no estoppel. *Anderson* v. *Cave,* 49 S. Car. 505. If the State was in privity with the defendant and he was the State's agent, it was an attempt to do indirectly what could not be done directly. A judgment against the agent of a State is not an estoppel as to the sovereign. *United States* v. *Clarke,* 8 Pet. 444; *The Siren,* 7 Wall. 152; *The Davis,* 10 Wall. 15; *Carr* v. *United States,* 98 U. S. 433; *Tindal* v. *Wesley,* 167 U. S. 201.

As to the power of the Attorney General to waive anything for the State, see *Commissioners* v. *Rose,* 1 Des. 461.

The Attorney General claimed no right to waive the State's rights nor did the legislature accord him that right or ratify his acts.

There is plain and adequate remedy at law. If the plea of former adjudication is good, it can be set up as a defense and fully availed of and the court of equity could not interfere. *Scottish & U. N. Ins. Co.* v. *Bowland,* 196 U. S. 611, and cases cited; *Pennoyer* v. *McCannaughy,* 140 U. S. 1.

As to the rule that the immunity of a State from suit is so absolute and unqualified that its officers cannot be sued, see *Re Ayers,* 123 U. S. 443; *State* v. *Jumel,* 107 U. S. 711; *Antoni* v. *Greenhow,* 107 U. S. 769; *Cunningham* v. *Railroad Co.,* 109 U. S. 446; *Hagood* v. *Southern,* 117 U. S. 52; *Osborn* v. *Bank,* 9 Wheat. 738; *Davis* v. *Gray,* 16 Wall. 203; *Tomlinson* v. *Branch,* 15 Wall. 460; *Littlefield* v. *Webster Co.,* 101 U. S. 773; *Allen* v. *Railroad Co.,* 114 U. S. 311; *Board* v. *McComb,* 92 U. S. 531; *Poindexter* v. *Greenhow,* 114 U. S. 270.

When the legal remedy is plain and adequate, no injunction will lie to prevent the collection of taxes. We cite the following on this point: *United States* v. *Rickert,* 188 U. S. 432; *Indiana Mfg. Co.* v. *Koehne,* 188 U. S. 681; *People's Nat. Bank* v. *Marye,* 107 Fed. Rep. 570; *Douglas* v. *Stone,* 110 Fed. Rep. 812.

As it is admitted that some of the taxes sued for are due, no injunction can lie in the case, the part that is due not having been tendered. *Carrington* v. *First Nat. Bank,* 103 Fed. Rep. 524; *West. Un. Tel. Co.* v. *Missouri,* 190 U. S. 412.

Appellants are merely attorneys for the State, without any personal interest in the cause and without any intention of committing any trespass upon the property or rights of the petitioner, merely prosecuting a suit at law to recover a debt alleged to be due the State, in which suit all the defenses set up here by the petitioner may and have been set up. To enjoin all the State's counsel from prosecuting her suit is to enjoin the State from so doing, which a court has no power to do. *Chandler* v. *Dix,* 194 U. S. 590; *International Postal Supply Co.* v. *Bruce,* 194 U. S. 601; § 720, Rev. Stat.; *Diggs* v. *Wal-*

cott, 4 Branch, 179; Peck· v. Jenness, 7 How.·624; Haines v. Carpenter, 91 U. S. 254; Belknap·v. Schild, 161 U. S. 10; Fitts v: McGee, 172 U. S. 516.

As to the contention that although the courts ordinarily will not enjoin when there is adequate remedy at law, still in an ancillary proceeding it will be done; an ancillary proceeding can only be based on a valid adjudication, and, if the original judgment is not effective against the State and its attorneys, the ancillary proceedings will not be effective either.

Mr. Theodore· G. Barker and Mr. P. A. Willcox with whom Mr. J. T. Barron was on the brief, for appellee.

Mr. Justice White delivered the opinion of the court.

Before analyzing the facts particularly bearing upon the legal questions for decision, in order to a comprehension of those questions we summarize in their chronological order matters which are undisputed concerning the origin and development of this controversy.

The legislature of South Carolina in 1855 exempted the capital stock and property of the Northeastern Railroad Company from all taxation during its charter existence. In 1849 the Cheraw and Darlington Railroad Company was chartered by legislative act, and by an amendment to the charter, adopted in 1863, the last-named company was endowed with all the. powers, rights and privileges granted by the charter of the Northeastern Railroad Company; it being besides provided that the charter should not be subject to the provisions of a general law, reserving the right to repeal, alter and amend, except where otherwise specially provided.

Under the assumed authority of a law of South Carolina, providing for the assessment and taxation of property, passed in 1868 (14 S. Car. Stat. 27–67), the Cheraw and Darlington Railroad was assessed in the counties of Darlington and Chesterfield, through which the road ran. It became the duty of

the respective treasurers of the counties named to collect the state and county taxes on the assessment thus made, and they proceeded so to do. Thereupon, in 1870, Thomas E. B. Pegues, a citizen of Mississippi, a stockholder of the Cheraw and Darlington Railroad, filed his bill in the Circuit Court of the United States for the District of South Carolina against the Cheraw and Darlington Railroad Company and the treasurers of Darlington and Chesterfield counties, seeking to enjoin the corporation from paying and the county treasurers from collecting the taxes referred to. The ground stated for the relief prayed was that the taxes in question impaired the obligation of the charter contract of exemption, and were, therefore, repugnant to the Constitution of the United States. Various provisions of a law of South Carolina, adopted in 1870, as an amendment to the act of 1868 under which the taxes were levied, restricting the right of the corporation to resist the collection of taxes, or to recover back an illegal tax, if paid, were alleged as justifying the interposition of a court of equity. An injunction *pendente lite* was allowed, restraining the collection of the disputed taxes. By its answer the corporation admitted the averments of the bill. A joint answer was filed for the two county treasurers, signed by "The Attorney General for the State of South Carolina, for defendants." This answer admitted the assessment, the steps taken to collect the taxes and asserted their validity, and denied the existence of the alleged contract of exemption. It was averred that if such an exemption ever existed it was subject to the legislative power to repeal, alter and amend, and such repeal was alleged to have been operated by constitutional and legislative provisions, which were referred to. Jurisdiction of the court, in equity, was challenged on the ground that there was an adequate remedy at law. A final decree passed in favor of the complainant, recognizing the alleged exemption and perpetuating the injunction. An appeal was prosecuted to this court. The cause was decided at the December term, 1872. It was held that there was a contract of exemption, which would be impaired by enforcing the taxes

complained of, and hence the decree below was affirmed. *Humphrey* v. *Pegues,* 16 Wall. 244.

For at least twenty-five years following the decision in the Pegues case no attempt was made to tax the property of the Cheraw and Darlington Railroad Company. In the year 1897 an act was passed, directing the Attorney General to proceed to test the right of any railroad company to exemption, and under this act that official sued the Cheraw and Darlington Railroad Company to recover one hundred and thirty-four thousand dollars, the sum of taxes, penalties and interest for a period of twenty years, on the alleged ground that the company had been mistakenly treated as having a contract of exemption. The Supreme Court of the State, however, without passing upon the question of exemption, decided that the right to recover did not obtain, because in any event an assessment against the railroad as provided by law was a prerequisite to the levy and collection of taxes.

From a statement made in the argument of counsel it is to be deduced that during the year 1898 the capital stock and property of the Cheraw and Darlington Railroad Company was acquired by the Atlantic Coast Line Railroad Company of South Carolina, and as the result of a charter granted to that company by the State of South Carolina, in 1898, it is conceded that the property formerly belonging to the Cheraw and Darlington Railroad Company became taxable, and that the State has since that time levied and collected the taxes due on the property. It is, moreover, conceded that the appellee on this record, the Atlantic Coast Line Railroad Company, a Virginia corporation, acquired, in 1900, the property of the Cheraw and Darlington Railroad Company, as the successor of the South Carolina corporation which bore the same name.

In the year 1900 an act was passed in South Carolina, providing for the assessment for taxation of railroad property "which has been off the tax books for the years in which they have been off the books, and to fix the time when such taxes shall become due, and for the collection thereof." The act

created a board to make the assessment to which it referred, limited the taxes to be imposed to ten years back, provided that the assessment made by the board should be put upon the rolls separately for each of the back years, and that there should be levied upon such assessment state and county taxes for the years to which the back assessment related. The act caused the taxes for which it provided to become a lien against the property upon which they might bear, and directed a certification of the taxes as assessed and levied to the respective county treasurers, and made it their duty to collect the same. To this end such treasurers were directed to make a demand for payment upon the company in whose name the assessment was made, or, if it was found that the property assessed was "in the control of another company, demand shall be made of the company . . . in possession of the property." By the act, in addition, the Attorney General was directed, if the back taxes assessed were not paid within sixty days after demand, to bring a suit in the name of the State, with the coöperation of such counsel as the counties might employ, to enforce the collection of the back taxes against the company in whose name they were assessed or against the company found in possession of the property assessed.

A meeting of the board appointed by this act was called in May, 1900, by the Secretary of State, for the purpose of assessing the property formerly belonging to the Cheraw and Darlington Railroad Company, and in the control and possession of the Atlantic Coast Line Railroad for a period of ten years back from 1898, on the ground that during such period the property in question had not been taxed for state or county purposes. The Atlantic Coast Line Railroad Company appeared and protested against the proposed assessment. In the protest it directed the attention of the board to the exemption act, to the injunction granted and the decree rendered and affirmed by this court in the Pegues case. The board overruled the protest and valued the property of the Cheraw and Darlington Railroad Company for a period of ten years back from

1898 inclusive. The valuation so made was certified to the officials of the counties of Chesterfield, Darlington and Florence respectively, these three counties embracing the territory included in the counties of Chesterfield and Darlington at the time the decree was rendered in the Pegues case. The state and county taxes or the years covered by the assessments were placed upon the rolls, and the taxes were certified for collection to the county treasurers. These officers demanded payment of the Atlantic Coast Line Railroad, as the company in possession and control of the property taxed. The company refusing to pay, the Attorney General of the State of South Carolina and counsel associated with him commenced, in the Common Pleas Court in the respective counties, actions in the name of the State to enforce payment against the Cheraw and Darlington Railroad Company and the Atlantic Coast Line Railroad Company, as the corporation in possession of the property. Thereupon the Atlantic Coast Line Railroad Company, alleging itself to be a citizen of Virginia, commenced, in the Circuit Court of the United States for the District of South Carolina, the proceeding which is now before us against the Attorney General of the State, the counsel associated with him in the suits above referred to, and the treasurers of Chesterfield, Darlington and Florence Counties. The petition which initiated the proceeding was filed as ancillary to the original Pegues case, and was entitled and numbered as of that cause. It referred to the prior proceedings in the cause, including the perpetual injunction therein issued, and to the decree of this court which affirmed the same. It alleged the assessment of back taxes as above stated, the asserted lien resulting therefrom, the demand of payment and the suits brought to enforce payment, and charged that each and all of the acts done concerning the said assessment of the back taxes, including the bringing of the actions in the state court, were in direct violation and disregard of the injunction previously issued. The prayer was that the petitioner as successor in interest of Pegues be protected in the rights and privileges adjudged in the Pegues

case, and be accorded the benefit of the injunction issued in that case, and to that end that the Attorney General of the State and his associate counsel be enjoined from further prosecution of the actions commenced in the state courts in the name of the State to enforce payment of the taxes, and that the respective county treasurers be enjoined from any further attempt to collect such taxes.

A preliminary injunction was granted, restraining the Attorney General and his associate counsel from further prosecuting the actions brought in the state court, and also restraining the county treasurers from further proceeding to collect the taxes. In response to a rule to show cause why the preliminary injunction should not be made perpetual the defendants answered, denying the right to the relief prayed upon grounds which, as far as now material, we shall hereafter state and consider. After hearing on petition and answers, accompanied by affidavits or admissions establishing the facts to be as we have previously stated them, a final decree was entered, perpetuating the preliminary injunction. Subsequently the court, reciting that its attention had been directed to the fact that its decree was interpreted as restraining the prosecution of suits for any tax which might have accrued from the eighteenth day of July, 1898, when the exemption had been surrendered, modified its decree so as to exclude from the operation of the injunction any act of the defendants looking to the collection, "by suit or otherwise, of any sum or sums of money which may be due or charged for taxes on said property of the Cheraw and Darlington Railroad Company after said eighteenth day of July, 1898, at which date it was admitted in argument the exemption established in *Pegues* v. *Humphreys* was surrendered." This appeal was then taken.

Although the errors assigned on the record are seventeen in number, in the argument at bar but six contentions were relied upon, and we shall therefore confine ourselves to their consideration.

All the propositions involved in the assignments will be dis-

posed of by determining first, whether all the defendants on this record, including the State through its Attorney General, were parties or privies to the decree in the Pegues case; second, if they were, whether the decree in that case concluded against them the want of power to impose or collect the taxes in controversy; and, third, if it did so conclude them, whether the court below erred in granting the relief which it awarded.

First. We at once treat as undoubted the right of the Atlantic Coast Line Railroad Company to the benefits of the decree in the Pegues case, since it is conceded in the argument at bar that that company, as the successor to the rights of Pegues, is entitled to the protection of the original decree rendered in his favor.

On the face of the record in the Pegues case, the nominal defendants were the treasurers of the counties of Chesterfield and Darlington, in which counties the property of the railroad was situated. Those now holding the office of treasurer in each of the named counties are among the parties on this record, with the addition of the treasurer of Florence County, which county, as we have stated, consists of territory embraced in Chesterfield or Darlington County at the time of the entry of the Pegues decree. That under these circumstances the defendant treasurers, as the successors in office of the officials who were parties to the Pegues case, are privies to that decree, is established. *Prout* v. *Starr*, 188 U. S. 537, 544.

In deciding whether the State and its Attorney General were privies to the Pegues decree, some elementary propositions must be borne in mind:

*a.* In view of the prohibitions of the Eleventh Amendment to the Constitution of the United States, a State, without its consent, may not be sued by an individual in a Circuit Court of the United States.

*b.* A suit against state officers to enjoin them from enforcing a tax alleged to be in violation of the Constitution of the United States is not a suit against a State within the prohibition of the Eleventh Amendment. The doctrine announced in

many previous cases on the subject was stated by Mr. Justice
Harlan, delivering the opinion of the court in *Smyth* v. *Ames,*
169 U. S. 466, wherein, after holding that a suit against officers,
to prevent the doing of acts authorized by a state statute was,
not necessarily a suit against the State, or within the prohibi-
tions of the Eleventh Amendment, it was said (pp. 518, 519)::

"It is the settled doctrine of this court that a suit against
individuals for the purpose of preventing them as officers of a
State from enforcing an unconstitutional enactment to the in-
jury of the rights of the plaintiff, is not a suit against the State
within the meaning of that Amendment."

And the subject was reviewed and restated in *Prout* v. *Starr,*
188 U. S. 537.

c. Although a State may not be sued without its consent,
such immunity is a privilege which may be waived, and hence
where a State voluntarily becomes a party to a cause and sub-
mits its rights for judicial determination, it will be bound
thereby and cannot escape the result of its own voluntary act
by invoking the prohibitions of the Eleventh Amendment.
*Clark* v. *Barnard,* 108 U. S. 436, 447.

As, then, the State was not a party *eo nomine* in the Pegues
case and as, although the suit was against officers it was not
for that reason alone a suit against the State, it must follow
that the ascertainment of whether the State was a party to
that cause depends upon determining whether the taxing of-
ficers who were the nominal defendants were endowed by the
State with the power, in a suit brought against them assailing
the validity of taxes levied, to represent the State in the con-
troversy so as to conclusively establish the rights of the State
against the plaintiff if decree passed against him, and on the
other hand to establish as against the State the rights of the
plaintiff in that cause if decree passed in his favor. Thus the
inquiry reduces itself to this: Did the State of South Carolina
become, in substance and effect, a party to the Pegues case?
In other words, did the State, through the authority which it
had conferred upon the defendant officers, voluntarily submit

to judicial determination the question raised in the Pegues case concerning the alleged limitation of the taxing power of the State, arising from the contract on that subject which was asserted in that case?

As a prelude to the consideration of the question just stated, it is well to determine at once the interest which the State had in the controversy which was represented by the county treasurers who were the nominal defendants in the Pegues case. Coming to do so, it is plain that the controversy which that suit involved was one in which the State was directly interested, since the officers who were the nominal defendants were charged by the state law, not only with the duty of collecting the county but also the state taxes, the validity of which was assailed on grounds which challenged the power of the State to impose any tax upon the property of the corporation during the existence of its charter. The officers were, therefore, in a sense, state officers, charged with the performance of a duty imposed for the benefit of the State. And that those officers were considered as being *pro hac vice* state officers, for the purposes of the controversy which the Pegues case involved, is shown by the statement of the case made by this court in delivering its opinion affirming the decree. Thus it was said (16 Wall. 245, 246):

"These different enactments above mentioned being in force, the state officers of counties in South Carolina, where the Cheraw and Darlington Railroad was situate, acting under the authority of the legislature of the State, imposed certain taxes on the stock and property of that company, and were proceeding to enforce payment of them, when one Pegues, a stockholder in Mississippi, filed a bill in the court below, praying an injunction to restrain the collection."

The question, then, is narrowed to this: Were the officers endowed with authority to stand in judgment for the State in suits brought against such officers wherein the validity of the taxes was assailed?

The law of South Carolina under which the taxes were levied

was adopted in 1868. Now, by section 137 of that act (14 S. Car. Stat. 65), the county auditors and county treasurers were authorized to employ counsel, and the counties were made liable for the fees of such counsel as well as for any damages which might be awarded against such officials, resulting from a defense made by them of any action prosecuted against the officials "for performing or attempting to perform any duty enjoined upon them by this act, the result of which action will affect the interests of the county, if decided in favor of the plaintiff in such action." It follows from this provision that where a suit was brought against a county treasurer in respect to county taxes, that official was empowered to represent the county for the purpose of the defense of its interest, and a judgment rendered against such official was therefore made binding upon the county. It was further provided in the section that "if the State be interested in the revenue in said action, the county auditor shall, immediately upon the commencement of said action, inform the Auditor of State of its commencement, of the alleged cause thereof, and the Auditor of State shall submit the same to the Attorney General, who shall defend said action for and on behalf of the State."

We see no escape from the conclusion that the provision last quoted, where suit was brought concerning state taxes, made a county treasurer, who was the state tax collector, an agent for the State and empowered him, "for and on behalf of the State," to defend the suit, and required him, in order fully to protect the interests of the State, to be represented by the highest law officer of the State, the Attorney General. And the power, which we think the section referred to conferred upon the county officers to represent the State in suits or actions, is moreover persuasively indicated by a consideration of the act of 1870, amending in certain particulars the act of 1868. 14 S. Car. Stat. 366. Substantially, that amendment, whilst forbidding the taxpayer from enjoining the collection of taxes, created a remedial system, by which questions of asserted illegality were to be examined by the state auditor, and, where that of-

ficial disallowed the claim of illegality, made it the duty of the taxpayer to pay, and, subject to certain conditions, gave a right of action to recover back the money paid. And by section 8, where such an action was brought, it was made "the duty of the Attorney General of the State to defend any suit or proceedings against any tax collector or other officer who shall be sued for moneys collected, or property levied on, or sold on account of any tax, when the state auditor shall have ordered such collector to proceed in the collection of any such tax, . . . and any judgment against such collector or officer, finally recovered, shall be paid in the manner provided in section 81 of the act to provide for the assessment and taxation of the property aforesaid"—that is, section 81 of the act of 1868. Now, by that section, where a judgment passed against a county official concerning state taxes which had been paid, the State was in effect made liable for the amount of the judgment. Thus, in such a case, as in cases provided for in section 137 of the act of 1868, the State through its officials was made the real defendant.

If there were doubt—which we think there is not—as to the construction which we give to the act of 1868, that doubt is entirely dispelled by a consideration of the contemporaneous interpretation given to the act by the officials charged with its execution, by the view which this court took as to the real party in interest on the record in the Pegues case, and by the action as well as non-action which followed the decision of that case by the state government in all its departments through a long period of years.

The answer in the Pegues case, which denied the existence of the alleged contract of exemption and asserted the existing and continuing power of the State to tax, was signed, for the defendants, by the Attorney General of South Carolina, who also, in his official capacity, verified such pleading. The word "defendants" cannot be construed as implying any other than the county officers empowered to represent the State, without imputing to the Attorney General a failure to discharge the

duty directly imposed upon him by the State. This must result from the command of the statute, that he should defend the suit, the state revenue being concerned, not merely for the county officers, but "for and on behalf of the State," a command which would have been wholly disregarded if the appearance of the Attorney General be treated as having been made solely for the purpose of representing the defendants as individuals. And subsequent events show that the highest law officer of the State, when he filed the answer for the defendants in the Pegues case, intended that answer to be what the statute caused it to be, that is, an answer for the defendants standing upon the record, for and in behalf of the State, in defense of the right of the State to collect the taxes. When the appeal was prosecuted from the final decree perpetually enjoining the officials who were named as the defendants (and, as we have seen, their successors in office) from any attempt in the future to collect a tax upon the property of the Cheraw and Darlington Railroad Company, such appeal was prayed by the same counsel who had signed the answer as Attorney General of the State, and who, upon the expiration of his term of office, was retained by his successor in office and the Governor of the State (as shown by an official report made to the legislature of the State) to prosecute the appeal and "to appear in behalf of the State." And when the appeal was heard in this court a printed argument was signed, not only by the counsel thus retained on behalf of the State by the Governor and the Attorney General, but also by the then incumbent of the office of Attorney General of the State. That this court, in deciding the appeal in the Pegues case, considered that the State was the real party appellant, is shown by the opinion, where it was said (16 Wall. p. 247):

"The State contends that the privileges thus granted were limited to those conferred upon the Northeastern by its original charter or act of incorporation, passed in 1851."

When to all these conclusive considerations there is added the fact that we have not been referred to any legislative action

repudiating the conduct of the Governor and the Attorney General in the defense of the Pegues suit for and on behalf of the State, and when besides we take into account the failure of the state government in all its departments, for more than twenty-five years following the decision of the Pegues case, to assert any right to tax in conflict with the contract exemption which the Pegues decree sustained, the binding efficacy of the decree in that case upon the State of South Carolina seems to us beyond the reach of serious controversy. Indeed, we are not left to conjecture that the inaction of the State was the result of what was deemed to be the conclusive effect on the State of the Pegues decree, since it is shown that in one or two instances after the decree was rendered where preliminary steps were taken by the taxing officials of the State to impose taxes on the property of the railroad, such efforts were at once abandoned in consequence of the advice of Attorneys General of the State that the decree in the Pegues case was conclusive and the property could not be taxed.

Concluding, as we do from the terms of the act of 1868, that the officers who were named as defendants in the Pegues case were, for the purpose of that litigation, the agents voluntarily appointed by the State to defend its rights and submit them to judicial determination, we content ourselves with saying that it is unnecessary to review the case of *State* v. *Corbin*, 16 S. Car. 533, and other decisions of the Supreme Court of South Carolina, pressed upon our attention, since those cases did not involve the statute of 1868 or statutes of like import. And, moreover, we must not be understood as holding that other provisions of the law of South Carolina, relied upon in argument, would be inadequate to bind the State by the action of its Attorney General, if the provisions of the act of 1868 did not exist. Into that consideration we have not entered.

Second. The State of South Carolina and its Attorney General, and his associate counsel, as the agents of the State, being, therefore, privies to and bound by the decree in the Pegues case, we must determine what was concluded by that decree.

That the issue in the case was the existence of a charter exemption from taxation in favor of the Cheraw and Darlington Railroad Company, and the consequent want of power of the State to tax the property of the railroad during the continuance of the exemption, is obvious. And that the decree rendered in the cause established the exemption embraced in the issues is also obvious. This being true, it unquestionably follows that the decree established as to the parties and their privies the very question in issue in this proceeding. Escape from this inevitable result is sought to be accomplished by several propositions, all of which we think are unsound.

*a.* The complaint in the Pegues case, it is said, mistakenly averred that the Cheraw and Darlington Railroad had not been built at the time the amendment of the charter was made which gave the exemption relied upon, and as this, it is asserted, was not traversed by the answer filed in the case by the Attorney General it was consequently erroneously assumed to be true in fact, and the decree, it is argued, was based upon such assumption. From this the contention is that if the truth had been established a different decree would have been rendered, because no consideration for the grant of exemption would then have appeared. But, even granting the premise, the deduction is unsound. To admit it would destroy the effect of the thing adjudged, resulting from the decree in the Pegues case, since all defenses then existing to the asserted right of exemption, whether brought to the attention of the court or waived, were foreclosed by the decree. *United States* v. *California & Oregon Land Co.*, 192 U. S. 355; *Fayerweather* v. *Ritch*, 195 U. S. 276, 300 *et seq.*, and cases cited. And although it be conceded for the sake of argument that the doctrine of *res judicata*, as announced in rulings of the Supreme Court of South Carolina, lends support to the contention made, our duty is to give to the decree of the Circuit Court of the United States in the Pegues case the force and effect to which it is entitled under the principles of *res judicata* as settled by this court, especially in view of the fact that the controversy in the Pegues case involved

rights protected by the Constitution of the United States. *Deposit Bank* v. *Frankfort,* 191 U. S. 499.

. *b.* It is urged that as the taxes, the collection of which the court enjoined, were not for the same years as were the taxes with which the Pegues case was concerned, the Pegues decree was, therefore, not *res judicata,* because it related to a different cause of action. This rests upon the assumption that a decree enjoining the collection of a tax for one year can never be the thing adjudged as to the right to collect taxes of a subsequent year. But the proposition entirely disregards the fact that the decree in the Pegues case, enjoining the collection of the taxes in controversy in that case, was rested upon the ground that there was a contract protected from impairment by the Constitution of the United States which was as controlling on future taxes as it was upon the particular taxes to which the Pegues suit related. The contention, therefore, simply asserts that a contract right of exemption was beyond the pale of judicial protection, because rights under such contract could never be sanctioned by final judicial action. Besides, the proposition is not open to controversy. *New Orleans* v. *Citizens' Bank,* 167 U. S. 371; *Deposit Bank* v. *Frankfort, supra.*

Third. It is insisted that the court below had no power to restrain the Attorney General of South Carolina and the counsel associated with him from prosecuting in the state courts actions authorized by the laws of the State, and hence that the court erred in awarding an injunction against said officers. Support for the proposition is rested upon the terms of the, Eleventh Amendment and the provisions of section 720 of the Revised Statutes, forbidding the granting of a writ by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy. The soundness of the doctrine relied upon is undoubted. *In re Ayers,* 123 U. S. 443; *Fitts* v. *McGhee,* 172 U. S. 516. The difficulty is that the doctrine is inapplicable to this case. Section 720 of the Revised Statutes was originally adopted in

1793, whilst the Eleventh Amendment was in process of formation in Congress for submission to the States, and long, therefore, before the ratification of that Amendment. The restrictions embodied in the section were, therefore, but a partial accomplishment of the more comprehensive result effectuated by the prohibitions of the Eleventh Amendment. Both the statute and the amendment relate to the power of courts of the United States to deal, against the will and consent of a State, with controversies between it and individuals. None of the prohibitions, therefore, of the Amendment or of the statute relate to the power of a Federal court to administer relief in causes where jurisdiction as to a State and its officers has been acquired as a result of the voluntary action of the State in submitting its rights to judicial determination. To confound the two classes of cases is but to overlook the distinction which exists between the power of a court to deal with a subject over which it has jurisdiction and its want of authority to entertain a controversy as to which jurisdiction is not possessed. From this it follows that, as in the Pegues case, the court had acquired jurisdiction with the assent of the State of South Carolina, to determine as to it the controversy presented in that case, the right of the court to administer relief, to make its decree effective, cannot be measured by constitutional or statutory provisions relating to original proceedings where jurisdiction over the controversy did not obtain. In other words, the proposition relied upon is disposed of by the conclusion which we have previously expressed concerning the persons who were parties and privies to the decree rendered in the Pegues case. Indeed, the proposition that the Eleventh Amendment, or section 720 of the Revised Statutes, control a court of the United States in administering relief, although the court was acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction, is not open for discussion. *Dietzsch* v. *Huidekoper*, 103 U. S. 494; *Prout* v. *Starr*, 188 U. S. 537; *Julian* v. *Central Trust Co.*, 193 U. S. 93, 112.

And this reasoning disposes of the contention that the court

below erred in enforcing its prior decree because there was ade-- quate remedy at law, by interposing a defense in the state courts to the actions brought by the Attorney General. That question was foreclosed by the decree in the Pegues case. So also does the reasoning dispose of the assertion that because a part of the tax for the year 1898 may have been due, therefore tender should have been made before invoking the power of the court to protect its jurisdiction and enforce the prior decree. The amendment of the decree made by the court eliminated from the controversy all question concerning the portion of the tax not covered by the decree in the Pegues case. Having acquired by that decree a right which the petitioner was entitled to enforce, whatever might have been the rule of tender as applied to other cases, that rule could not rightly be invoked to deprive the court below as a court of equity of the power to protect the petitioner in the enjoyment of rights previously secured under a decree of the court.

*Affirmed.*

MR. JUSTICE BROWN dissents.