**VAQUERÍA TRES MONJITAS, INC. and Suiza Dairy, Inc., Plaintiffs,**

**v.**

**Myrna COMAS, in his official capacity, as the Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico, and Edmundo Rosaly, in his official capacity, as Interim Administrator of the Office of the Milk Industry Regulatory Administration for the Commonwealth of Puerto Rico, Defendants.**

Civil Nos. 04–1840 (DRD), 08–2191 (DRD), 08–2380(DRD).

United States District Court, D. Puerto Rico.

Dec. 30, 2013.

Enrique Nassar–Rizek, Maxine M. Brown–Vazquez, Enrique Nassar Rizek & Associates, Jose R. Lazaro–Paoli, Rafael Escalera–Rodriguez, Amelia Caicedo–Santiago, Carlos M. Hernandez–Burgos, Reichard & Escalera, San Juan, PR, for Plaintiffs.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court are the following motions: (a) *Defendants' Motion to Alter, Amend or Relief from Judgment,* Docket No. 2408; (b) Suiza's *Response to Defendants' "Motion to Alter, Amend or Relief from Judgment" (Dkt. No. 2408),* Docket No. 2418, and (c) *Vaquería Tres Monjitas, Inc.'s Reply to Dockets 2408 and 2409,* Docket No. 2428. Intervening Industria Lechera de Puerto Rico ("INDULAC") also moved the Court to alter or

amend judgment, Docket No. 2409;[1] Suiza's opposition, Docket No. 2418, and VTM's reply to Docket entries No. 2408 and 2409, filed under Docket No. 2428. For the reasons set forth below, the requests filed by both the defendants and INDULAC to alter, amend or modify the *Amended Order and Judgment* of November 7, 2013, Docket No. 2351, are denied.

### Factual and Procedural Background

On October 29, 2013, the parties, Vaquería Tres Monjitas, Inc. ("VTM"); Suiza Dairy, Inc. ("Suiza"), the Secretary of the Department of Agriculture of the Commonwealth of Puerto Rico (the "Puerto Rico Department of Agriculture"), the Hon. Myrna Comas in her official capacity, and as Acting Administrator of the Office of the Milk Industry Regulatory Administration ("ORIL"), and the Commonwealth of Puerto Rico through the Secretary of Justice of the Commonwealth of Puerto Rico, the Hon. Luis Sánchez Betances signed and filed a *Final Settlement Agreement and Memorandum of Understanding Between the Parties* (the "Settlement Agreement"), *see* Docket No. 2322.

The Court is cognizant that the PRDFA moved the Court since October 30, 2013 to stay the entry of judgment, *see* Docket No. 2324, on the grounds that the PRDFA were not part of the negotiations, hence, the terms and conditions of the settlement agreement are completely unknown to the PRDFA, including the amendments agreed to the provisions of Regulation No. 12. The PRDFA prayed for "a reasonable amount of time for the proper scrutiny of the new administrative Regulation and Price Order which affects not only the parties to the settlement, but all participants in the industry and the general public at large." *See* Docket No. 2324. *See also INDULAC's Urgent Opposition to the Adoption of Final Settlement Agreement and Memorandum of Understanding Between the Parties,* Docket No. 2328. The record also shows that the PRDFA eventually filed a *Notice of Appeal,* Docket No. 2354. This matter is now pending before the United States Court of Appeals for the First Circuit ("First Circuit"), USCA Case No. 13–2412. However, since the PRDFA's request for stay was denied by both the District Court and the First Circuit, an order will be issued separately by the District Court in Civil No. 08–2191. Likewise, INDULAC's arguments regarding prejudice triggered by the Settlement Agreement will be addressed separately.

On November 7, 2013, the Court entered an *Amended Order and Judgment,* Docket No. 2351, approving the *Final Settlement Agreement and Memorandum of Understanding Between the Parties* of October 29, 2013 ("Settlement Agreement"), Docket No. 2322.

On December 5, 2013, the defendants, Hon. Myrna Comas Pagán, in her official capacity as Secretary of Agriculture of the Commonwealth of Puerto Rico (the "Secretary of Agriculture"), and the Hon. Edmundo Rosaly, in his official capacity as Interim Administrator of ORIL, moved the Court to amend or alter judgment, *see Defendants' Motion to Alter, Amend or*

---

1. The Court notes that INDULAC, *see* Docket No. 2409, is not a party in the instant case, hence, INDULAC does not have standing to request that the *Judgment* be amended or modified. *See Diamond v. Charles,* 476 U.S. 54, 65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), citing *Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In any event, the core of INDULAC's argu-

ment is based on the premise that the Settlement Agreement entered by the parties herein violated the Eleventh Amendment, which has been addressed by the Court in the instant *Opinion and Order.* Further, INDULAC mirrors arguments also alleged by the Puerto Rico Dairy Farmers Association ("PRDFA"), which the Court shall address in a separate order.

*Relief from Judgment,* Docket No. 2408. Suiza and VTM duly opposed the defendants' request, *see* Suiza's *Response to Defendants' "Motion to Alter, Amend or Relief from Judgment" (Dkt. No. 2408),* Docket No. 2418, and *Vaqueria Tres Monjitas, Inc.'s Reply to Dockets 2408 and 2409,* Docket No. 2428. On the same date, that is, December 5, 2013, intervening INDULAC, also moved the Court to alter or amend judgment pursuant to Rule 59(e) [Federal Rules of Civil Procedure 59(e)], *see* Docket No. 2409. Suiza filed its *Response in Opposition to INDULAC's Motion to Alter or Amend Judgment (Dkt. No. 2409),* Docket No. 2427. VTM filed its opposition under Docket No. 2428. INDULAC filed its reply, *INDULAC's Reply to Opposition to Motion to Alter or Amend Judgment filed by Suiza Dairy, Inc. (Dkt. No. 2427),* Docket No. 2437.

On December 6, 2013, the defendants filed a *Notice of Appeal,* Docket No. 2413, USCA Case No. 13–2517, on the grounds that the "Settlement Agreement cannot be construed as a waiver of Eleventh Amendment immunity, [as] the official Defendants did not have the intent or the authority to waive sovereign immunity and that the regulatory accrual as a mechanism for recovery of losses has not been finally determined to violate Puerto Rico's immunity from suit in federal court or from damage awards." *See* Docket No. 2408, page 2.

### Issue

Whether or not the Secretary of Agriculture and/or ORIL and/or the Commonwealth of Puerto Rico through the signature of the Secretary of Justice "waived" the Eleventh Amendment immunity when signing the Settlement Agreement?

### Analysis

To answer defendants' question, we refer first to the covenants of the Settlement Agreement. Paragraph No. 5 of the Settlement Agreement provides:

> In consideration and recognition of the vital importance of the Milk Industry in Puerto Rico, upon the execution of this agreement, **The Commonwealth of Puerto Rico will take the necessary steps to create a Special Fund to promote the efficiency of the Milk Market in Puerto Rico** ... (Emphasis ours).

Paragraph No. 14 of the Settlement Agreement provides:

> **In order to protect the Puerto Rican consumers, the Government of Puerto Rico** [the Commonwealth of Puerto Rico] **by means of any of its instrumentalities** [the Department of Agriculture or ORIL], **has agreed to contribute the following amounts to the regulatory accrual payout,** [of the industrial milk processors, VTM and Suiza] which will be invested with preference in Puerto Rico:
>
> - $50 million during calendar year 2014 no later that December 31, 2014;
> - $15 million during calendar year 2015 no later than December 31, 2015;
> - $15 million during calendar year 2016 no later than December 31, 2016;
> - $15 million during calendar year 2017 no later than December 31, 2017.

The distribution of the above identified payments between the milk processors will be made pursuant to Exhibit 4, Table 1.S.6.2, using the "accumulated regulatory accruals net of collections" estimated as of November 6, 2013. (Emphasis ours).

The last unnumbered covenant of the Settlement Agreement, which appears at the

bottom of page 5, Docket No. 2322, provides:

> The terms and conditions of this agreement will be incorporated into the firm, final an unappealable judgment to be issued by the District Court. *That Judgment will be equally binding to and enforceable against all signatories of this Agreement and the Government of Puerto Rico. All such parties [the Department of Agriculture, ORIL, the Commonwealth of Puerto Rico] hereby waive any defense they may have to the enforcement of this Agreement.* (Emphasis ours).[2]

incorporated as part of the Settlement Agreement, Docket No. 2322, page 3. (Emphasis ours).

2. The Court is appalled, stunned and most disappointed with the *Defendants' Motion to Alter, Amend or Relief from Judgment filed under Docket No. 2408*, as well as, the content of the *defendants' Notice of Appeal*, filed under Docket No. 2413. The Government has appealed, not only the *Order and Judgment* and the *Amended Order and Judgment*, Docket entries No. 2347 and 2351, but has also appealed **"any and all adverse interlocutory orders, judgments, decrees, decisions, rulings and opinions that merged into and became part of the *Opinion and Order*, that shaped the *Opinion and Order*, that are related to the *Opinion and Order*, and upon which the *Opinion and Order* is based."** *See* Docket No. 2413. The record is clear that the Government has appealed all the adverse opinions issued by this Court before the First Circuit and the United States Supreme Court, not once, but twice. But to appeal the *Amended Order and Judgment* approving the Settlement Agreement which was directly negotiated by the Government and for the benefit of the Government in an honest attempt **to save the consumer from higher increases in the cost of milk,** is a clear violation of the doctrine of one's own acts ("doctrina de los actos propios") and/or the doctrine of impediment ("doctrina de impedimento"). *See Ceramic Enterprises, Inc. v. Dexion Incorporated*, 994 F.Supp. 97, 105 (D.P.R.1998). The Government is now judicially estopped from acting against its own actions, that is, the Government cannot untie what it tied under the terms and conditions of the Settlement Agreement. "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words appear contrary to the evident intention of the contracting parties, the intention shall prevail." *Ceramic Enterprises*, 994 F.Supp. at 104, citing Article 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3471. Lastly, the formula used to calculate the regulatory accrual payout is the one provided by Regulation No. 12, as provided by Paragraph No. 9 incorporated as part of the Settlement Agreement, Docket No. 2322, page 3. (Emphasis ours).

Defendants are now attempting to re-write what they agreed as to the formula relating to the cost and reasonable rate of return of the industrial milk processors. The Experts Agreement, filed in open court by counsel with the expressed consent thereof, set forth the key elements of the formula, *i.e.:* (1) the regulatory accrual, (2) the return on equity ROE, including the unsystematic risk of doing business in Puerto Rico. All these matters were originally agreed by experts in the Experts Agreement, Docket No. 1003, executed on August 26, 2008. However, the defendants and their experts insisted on the fact that there was no agreement. Finally, after the Court entered an opinion as to non-compliance, contempt and continued violations to due process, and equal protection, the parties, after nine years of litigation, entered into an agreement as to all the components of the formula to determine cost and reasonable rate of return, as to the milk processors. The parties incorporated the Administrative Regulation No. 12, as amended, into the Settlement Agreement containing all the elements of the formula to determine the regulatory accrual and the return on equity. The defendants simply cannot, at their whim, now unilaterally, reject via an appeal, the parameters for the establishment of the rules and other specific agreements entered into at Regulation No. 12, which is incorporated as part of the Settlement Agreement. Further, afterwards counsel for the Secretary of Justice admitted in open court that the Settlement Agreement ended the litigation. *See infra.* Amongst the significant agreements as to costs, the Regulation No. 12, authorizes a reasonable cost to the milk processors for the use of it own lands, which had previously been granted to the farmers one year prior thereto at a significant increase to the milk, without any hearing. ORIL has been playing "fast and loose" with the Court orders by

### The Eleventh Amendment

The Eleventh Amendment of the Constitution of the United States of America provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

engaging in result oriented determinations through the changing of previously accepted parameters or previously accepted expenses. The Court provides but a few examples. The use of merchandisers to place the fresh cold milk in the supermarkets' refrigerators authorized to the milk processors, as well as to INDULAC, the UHT provider, to place the UHT milk in the supermarkets' racks, was denied surprisingly to the milk processors after years of previous authorization. This resulted in a considerable downfall to the net profit of the companies affecting the milk processors return on equity and regulatory accrual. An agreement reached by the experts by the inclusion of an unsystematic risk of doing business in Puerto Rico, as agreed in the *Experts' Agreement* in August 2008, based on the Puerto Rico's decreasing economic condition of the Island, starting in the Summer of 2007, and continuing until this date of December 30, 2013. *See* Docket No. 1003. Surprisingly, ORIL and its experts negated the economic reality of Puerto Rico based on economic statistics expressed in many of the Court's opinions. The Commonwealth of Puerto Rico, however, prevailed at the First Circuit and the Supreme Court of the United States based on the poor economic conditions in the Island, which triggered the emergency enactment of Act No. 7 of March 9, 2009, 3 L.P.R.A. §§ 8791 *et seq.*, authorizing government lay-offs. As to the economic position of Puerto Rico, the recent economic report set forth by Moody's today, that is, December 27, 2013, published at the U.S. Public Finance, page 1, as follows: "We placed the Commonwealth of Puerto Rico's general obligation (GO) Baa3 rating under review for downgrade (RUR) on December 11 due to the government's weakening liquidity, increasing reliance on external short-term debt, con-

Moreover, the record is pellucid as to the intention of the Government of Puerto Rico at the time when the Settlement Agreement was finalized, hence, reference is made to the Transcript of the Hearing held on October 29, 2013, before the undersigned, particularly as to the statement made by counsel Gerardo De Jesús–Annoni, in his capacity of Deputy Secretary of Justice in Charge of Litigation of the Puerto Rico Department of Justice, *see* Docket No. 2329, pages 3–4.[3]

strained market access, and uncertain prospects for growth in a persistently sluggish economy. These risk factors are exacerbating the longstanding financial strain caused by the commonwealth's very high debt load and pension obligations, as well as its chronic budget deficits." Yet defendants' counsel insists on appealing the reality, notwithstanding, that the matter has been accepted.

Another disagreement of the defendants with the Court's orders constitutes ORIL's insistence to use a beta coefficient in the formula (unlevered beta for manufacturing milk products), the agreed CAPM formula. ORIL is attempting to use Dean Foods as a coefficient to artificially downgrade the formula. The use of Dean Foods makes academic the other four surrogate companies used as beta surrogates, as Dean Foods constitutes 96% of the totality of the sum of the capital of the other surrogates, and is over 100 times the size in capital of the sum of both local dairy companies in Puerto Rico. This is a type of a surrogate example not to be used in Puerto Rico in Government regulated business "not fit as to Puerto Rico alone," as mandated by the First Circuit in the case of *Tenoco Oil Company, Inc. v. Consumer Affairs,* 876 F.2d 1013, 1024 (1st Cir.1989). Currently, Dean Foods is not a surrogate company authorized under Regulation No. 12, pursuant to the agreement of the parties. Somehow, defendants now wish to appeal the *Order* of the Court. *See also Amended Opinion and Order Nunc Pro Tunc,* Docket No. 2289, wherein the Court refers to other glaring examples of contemptuous conduct.

**3.** The Court noted that counsel De Jesús–Annoni is a signatory party to the Settlement Agreement, *see* Docket No. 2322, page 7.

Mr. De Jesus: If I may, Your Honor. Gerardo De Jesús Annoni, counsel for the Secretary of Agriculture. Your Honor, after a few hours of sleep during the last week and a lot of hard work, **I am happy to inform the Court that this evening the parties have reached an agreement to end this case. I must say that the agreement that has been reached is quite innovative and creative, when adopting most of the methodology agreed by the parties' experts and suggested or ordered by the Court, all the times, to compensate plaintiffs for lost profits.** The moneys that Suiza and Vaqueria will end up receiving will be invested in part in plant enhancements and more efficient manufacturing procedures. Moreover, the producers of raw milk will receive a few perks themselves, such as a significant amount of money for the purchase of animal food. Finally, and most importantly, all of this has been done, Your Honor, without having to impose an increase in the price of milk, something that considering the hard economic times we are living in, would have caused great damages to the consumers and to the future of the industry. I commend brother counsel and sisters for all their efforts during the last week, and I thank the Court for its patience and guidance during all these years. Indeed, Your Honor, this case now is *cosa finita.* Thanks. (Emphasis ours).

■ It is settled that there are several ways where the State may abrogate its Eleventh Amendment immunity: "(1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation." *Consejo de Salud de la Comunidad de la Playa de Ponce,* Inc., et al. v. González–Feliciano, et al., 695 F.3d 83, 103 (1st Cir.2012), *cert. denied,* —— U.S. ——, 134 S.Ct. 54, 187 L.Ed.2d 24 (2013) (list of cases), citing *New Hampshire v. Ramsey,* 366 F.3d 1, 15 (1st Cir.2004). "The concept of waiver by litigation conduct is related to the doctrine of judicial estoppel." *New Hampshire,* 366 F.3d at 16. The Court in *New Hampshire,* 366 F.3d at 17, further held:

> The state relies on the doctrine that an "Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar" that it may be raised on appeal even if not raised in the trial court. *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The scope of that "belated-raising" doctrine after *Lapides v. Bd. of Regents,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) is unclear. Regardless, the state is wrong in arguing that the "belated-raising" doctrine undercuts the waiver doctrine. The doctrine that a state may waive its immunity by its litigation conduct has been alive and well both before and after *Edelman.* See *Lapides,* 535 U.S. at 618–24, 122 S.Ct. 1640; *Gunter v. Atl. Coast Line R.R. Co.,* 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906).

The Government lies most of its argument in the case of *Frazar, et al. v. Gilbert,* 300 F.3d 530 (5th Cir.2002). However, this case was reversed by *Frew v. Hawkins,* 540 U.S. 431, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004), wherein the Supreme Court granted *certiorari* and held that a consent decree is enforceable under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Court in *Frew,* 540 U.S. at 437, 124 S.Ct. 899, further held:

> Consent decrees have elements of both contracts and judicial decrees. *Firefighters v. Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986).

A consent decree "embodies an agreement of the parties" and is also "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Consent decrees entered in federal court must be directed to protecting federal interests. In *Firefighters*, we observed that a federal consent decree must spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based. 478 U.S. at 525, 106 S.Ct. 3063.

In the instant case, it is clear that the Government's intention when signing the Settlement Agreement was to voluntarily transfer from the Commonwealth of Puerto Rico's coffers,[4] meaning the Government's General Fund, to end the instant litigation by specific monetary acts, but not limited to: (a) "take the necessary steps to create a Special Fund to promote the efficiency of the Milk Market in Puerto Rico;" as provided by Paragraph No. 5, Docket No. 2322, page 2; and (b) contribute "the following amounts to the regulatory accrual payout," as provided by Paragraph No. 14 of the Settlement Agreement, Docket No. 2322, page 4. Furthermore, on December 18, 2013, the Governor of Puerto Rico, the Hon. Alejandro García Padilla, in response to the farmers' request, pending a final study of the industry, agreed to assume the farmers' losses triggered by the Settlement Agreement entered by the Government and the fresh milk processors, to wit, Suiza Dairy, Inc. and Vaquería Tres Monjitas, Inc. According to the agreement entered into by the Governor and the farmers, the monies to cover the farmers' losses (past and future) will be disbursed from the newly created Special Fund to promote the efficiency of the Milk Market in Puerto Rico. *See* the official Notice provided by La Fortaleza on December 18, 2013 issued in the Spanish language, and duly translated into English, as Exhibit No. 1 of this Order. The Court may take judicial notice of official government internet publications.[5]

In sum, the Government of Puerto Rico will pay approximately $3 million for the next 60 days to compensate the farmers for their losses triggered by the Settlement Agreement, in addition, to the $58.8 million transferred from the Government's General Fund to the newly created Special Fund for the Efficiency of the Milk Industry, as agreed by the Government in the Settlement Agreement. *See* Docket No. 2448–2, *Dairy Farmers Achieve Their Objective And Obtain Government Compensation, Fortaleza Agrees To Subsidize Losses Until ORIL Completes Study. See* www.elnuevodia.com of December 19, 2013, certified English translation provided by the PRDFA. In addition, the Settlement Agreement set forth a net payment of 80 cents for the raw milk sold by the farmers to the milk processors. *See* ORIL's Administrative Order of October 29, 2013,

---

4. *See Vaquería Tres Monjitas, Inc., et al. v. Irizarry, et al.*, 587 F.3d 464, 477–478 (1st Cir.2009).

5. The Court can take judicial notice of an unquestioned economic event, which has been reprinted in internet articles describing or confirming the event, or other information, such as, published governmental statistics. *Chhetry v. U.S. Department of Justice*, 490 F.3d 196 (2d Cir.2007). *See also O'Toole v. Northrop Grunman Corp.*, 499 F.3d 1218, 1224–1225 (10th Cir.2007).

fixing the price of fresh fluid milk effective on November 7, 2013, Docket No. 2322–2, page 3, wherein ORIL, through this Order of October 29, 2013, acquiesced that the farmers will have a net compensation of 80 cents per quart of milk. Furthermore, ORIL's Order of October 29, 2013, was also personally signed by the Secretary of Justice and the Secretary of Agriculture, amongst the other parties signatories of the Settlement Agreement. *See* Settlement Agreement, Docket No. 2322–2, pages 3–4. The farmers, notwithstanding allege that there is a loss, and the Settlement Agreement "legally prejudices the PRDFA." *See* Docket No. 2384, page 3. Suiza alleges that the loss is around 1.5 cents, but that 1.5 cents was consistent with the 78.5 cents that the farmers received in the year 2013.

It is settled that once the Government voluntarily agreed to use public funds to pay the regulatory accrual payout, of the industrial milk processors (Suiza and VTM) it has expressly waived its Eleventh Amendment immunity "by its conduct in litigation." *New Hampshire,* 366 F.3d at 15–16. "All such parties hereby waive any defense that they may have to the enforcement of this Agreement." *See* Docket No. 2322, page 5. The Court is of the opinion that the above language is "unambiguous" and "evince[s] a clear desire to submits rights to adjudication by the federal court." *Consejo de Salud de la Comunidad de la Playa de Ponce, Inc.,* 695 F.3d at 101–105.

The agreement reached by the Governor with the farmers further confirmed that the Commonwealth of Puerto Rico waived its Eleventh Amendment immunity, as the Governor agreed to use public funds to compensate the farmers' losses triggered by the Settlement Agreement. Furthermore, the Government's intention is clearly stated in the Settlement Agreement as the

terms and conditions agreed were to protect the Puerto Rico Milk Industry and the consumers. In the event the Government is now concerned with the potential payment of damages, this matter will be entertained by the Court when and if the situation arises, as the terms and conditions of the Settlement Agreement are purely prospective.

The Court emphasizes that the Secretary of Justice himself signed the Settlement Agreement. The Secretary of Justice stands as the first executive representative in the order of succession, in the absence of the Governor and the Secretary of State. *See* 3 L.P.R.A. § 8(1). Further and most critical, the Secretary of Justice has express authority to represent the Commonwealth of Puerto Rico, "its agencies ..." [the Department of Agriculture] ... "in civil matters," "before the Courts **or other forums in or outside Puerto Rico.**" (Emphasis ours). *See* 3 L.P.R.A. § 292(a) and (a)(1). Finally, the Secretary of Justice is authorized to enter into settlements or transactions involving "agencies ...," pursuant to 3 L.P.R.A. § 292(b).

In the instant case, the Secretary of Justice and the Secretary of Agriculture signed themselves, as opposed to agents signing the Settlement Agreement, and agreed "to waive any defense they may have to the enforcement of the Agreement." *See* Docket No. 2322, page 5. Further, "[t]he judgment will be equally binding to and enforceable against all signatories of this Agreement and the Government of Puerto Rico." *Id.* The Secretary of Agriculture further signed as the Acting Administrator of ORIL.

In *Lapides,* 535 U.S. at 622, 122 S.Ct. 1640, the Supreme Court specifically authorized a waiver to the Eleventh Amend-

ment by a State Attorney General, and held:

> This Court consistently has found a waiver when a State's attorney general, authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction. *See Gardner v. New Jersey,* 329 U.S. 565, 574–575 [67 S.Ct. 467, 91 L.Ed. 504] (1947); *Gunter v. Atlantic Coast Line R. Co.,* 200 U.S. 273, 285–289, 292 [26 S.Ct. 252, 50 L.Ed. 477] (1906); *cf. Clark v. Barnard,* 108 U.S. 436, 447–448 [2 S.Ct. 878, 27 L.Ed. 780] (1883) (not inquiring into attorney general's authority).

*See also Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico,* 270 F.3d 17, 24 (1st Cir.2001) ("A state official (Secretary of Justice) may only waive the State's sovereign immunity during the course of litigation when specifically authorized to do so by the state's constitution, statutes or decisions"). The Secretary of Justice enjoys unquestioned authority to sign the Settlement Agreement in the instant case. *See* collection of cases cited *infra.*

### *The Settlement Agreement non-appealable provision*

█ Lastly, the Court also stresses that the signatories of the Settlement Agreement specifically agreed that "[t]he terms and conditions of this settlement will be incorporated into the firm, final and unappealable judgment to be issued by the District Court." *See* Docket No. 2322, page 5. The Government is judicially estopped from now appealing the terms and conditions of the Settlement Agreement except as to the Eleventh Amendment waiver as approved by the *Amended Order and Judgment* of November 7, 2013, Docket No. 2351, by alleging that the Government never waived its Eleventh Amendment immunity. The instant *Opinion and Order* overrides the prior *Amended Order and Judgment,* Docket No. 2351, **only** as to the waiver of the Eleventh Amendment.

### Conclusion

In view of the foregoing, the *Defendants' Motion to Alter, Amend or Relief from Judgment,* Docket No. 2408, and Indulac's motion to alter or amend judgment, Docket No. 2409, are denied. The Clerk shall notify a copy of this *Opinion and Order* to the Appeals' Clerk.

IT IS SO ORDERED.