**In re Senator Troy FRASER, Senator Kenneth Armbrister, Senator Jane Nelson, Representative Tom Craddick, Representative Dianne White Delisi, Representative Kyle Janek and Representative Dan Kubiak, Relators.**

No. 598CV45.

United States District Court,
E.D. Texas,
Texarkana Division.

Nov. 5, 1999.

John J. McKetta, III, P.M. Schenkkan, Graves Dougherty Hearon & Moody, Austin, TX, for Troy Fraser, Kenneth Armbrister, Jane Nelson, Kyle Janek, Dan Kubiak, Dianne White Delisi, Tom Graddick.

William Andrew Taylor, Attorney General's Office, Austin, TX, for Atty. Gen. of TX.

David Grant Kaiser, Kaiser & Morrison PC, Houston, TX, Michael E. Tigar, Tigar Law Firm, Washington, DC, for Real Parties.

Elizabeth Saunders, Supeme Court of Texas, Austin, TX, pro se.

## *ORDER*

FOLSOM, District Judge.

Now before the Court is Relators'[1] Motion to Remand. Members of the Texas

---

1. A relator is a party in interest who is permitted to institute a proceeding in the name of the people or the attorney general when the right to sue resides solely in that official.

state legislature ("Relators") seek remand of a mandamus proceeding originally filed in the Texas Supreme Court and removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1651. Relators argue removal was improper because this Court lacks subject matter jurisdiction and because removal is precluded by the Eleventh Amendment. Realtors further argue that this case should be remanded because it was removed to the wrong district and, alternatively, even if removal was proper, the Court should abstain. The Court, through this order, hereby addresses Relators' subject matter jurisdiction, improper removal, and Eleventh Amendment claims. This Order does not attempt to address Relators' abstention arguments or the actual merits of the writ filed in the Texas Supreme Court.

After extensive briefing and careful review of the issues presented, the Court finds that the Court has jurisdiction over Relators' claims because it has ancillary jurisdiction to enforce the settlement agreement and because jurisdiction is proper under 28 U.S.C. § 1651, the All Writs Act. The Court also finds that the Eleventh Amendment is not a bar to the Court's jurisdiction. Therefore removal to this Court was proper. Realtors' motion is DENIED.

## I

### *History of the Case*

The motion now before the Court is but one chapter in the ongoing litigation first filed in this Court on March 28, 1996, styled *The State of Texas v. The American Tobacco Co., et al.* ("Texas Tobacco Litigation"). Although the Court and the parties are well aware of the complex factual history of this case, it is necessary to revisit that history as it will facilitate an understanding of the Court's holding.

In 1996 the State of Texas entered into an agreement with several private attorneys ("Private Counsel")[2] to provide legal services the State and to the attorney general. The contract provided that Private Counsel would advance all costs and expenses of the litigation and would work under the direction of the attorney general. In return, under the terms of the contract, Private Counsel were to be compensated in the amount of fifteen percent of the monies recovered as a result of the litigation.

On March 28, 1996 the Attorney General for the State of Texas, in coordination with Private Counsel, filed its original complaint in the Federal District Court for the Eastern District of Texas[3]. The suit, as subsequently amended, sought recoupment of State funds spent for smoking-attributable medical costs. The State alleged seventeen causes of action against eleven defendants, including claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964. By the conclusion of the main case, there were 132 attorneys of record, 1,856 docket entries, and tens of thousands of pages of briefing. There were approximately 23 million documents produced, hundreds of depositions taken, 50,000 exhibits listed, and 1,500 witnesses designated. There were 472 motions filed, and twenty-one hearings over the course of nearly two years. The Court allotted 450 hours or approximately six months for the trial of this case.

In late 1997—and on the heels of pending National Legislation that would reduce any settlement amounts received—a settlement was reached between the State of

Black's Law Dictionary 893 (abridged 6th ed.1991).

**2.** Private Counsel includes Walter Umphrey, P.C., John M. O'Quinn, P.C., John Eddie Williams, Jr., Reaud, Morgan & Quinn, Inc., and the Nix Law Firm, each of whom is defined and identified as "counsel" in the Outside Counsel Agreement executed by Attorney General Dan Morales on March 22, 1996, and Ness, Motley, Loadholt, Richardson & Poole.

**3.** *See State of Texas v. American Tobacco Co., et al.*, 14 F.Supp.2d 956 (E.D.Tex.1997) ("Texas Tobacco Litigation").

Texas and the Tobacco Industry. On January 22, 1998, this Court entered a final judgment in the Texas Tobacco Litigation approving a comprehensive settlement agreement and release. The tobacco industry agreed to pay the State of Texas $15.3 billion dollars over twenty-five years and agreed to nonmonetary restrictions on the advertising and distribution of tobacco products. The Industry further agreed to abandon their allegations that the Attorney General did not have the power to enter into a contract with Private Counsel[4].

On January 16, 1998, Private Counsel filed a motion for approval of attorney's fees, asking the Court to determine the amount of fees that were reasonable under the circumstances. On January 22, 1998, the Court approved the fee arrangement embodied in the contract subject to the provisions of the compromise settlement agreement and release. The order issued by the Court explicitly provided for the Court's continuing exclusive jurisdiction over the provisions of the order and final judgment.

On January 30, 1998, two years after the original action was filed, Relators filed a mandamus action in the Texas Supreme Court. In their prayer for relief, Relators asked the Supreme Court of Texas to issue a writ of mandamus requiring the Attorney General to file pleadings in the Texas Tobacco litigation: (1) informing the Court that the Attorney General has no statutory or constitutional authority to bind the State to a contingent fee arrangement for legal services on behalf of the State, to bind the State to pay such fees, or to waive the State's right to oppose the fees; (2) to inform the Court that the Attorney General's position on the fee issue does not represent that of his client, the State of Texas; and (3) to request this Court to reconsider its order approving the fee

award and to consider any objections filed by Relators or other interested persons. *See* Emergency Petition for Writ of Mandamus, No. 98–0089, (Tex.Sup.Ct. Jan. 30, 1998).

## II.

### *Subject Matter Jurisdiction and Removal*

Lower federal courts are courts of limited jurisdiction. *See Sheldon v. Sill,* 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850). Federal courts are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution and those cases entrusted to them by a jurisdictional grant authorized by Congress. *See* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 13 Federal Practice and Procedure § 3522 (2d ed.1983). Congress may give, withhold, or restrict the lower federal courts' jurisdiction at its discretion but may not grant jurisdiction in excess of the limits set by the Constitution. *See Kline v. Burke Constr. Co.,* 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922).

Title 28 U.S.C. § 1441(a) provides that "[a]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." However, a court's removal jurisdiction is not an exception to a federal court's obligation to exercise restraint when inquiring into its own jurisdiction. *See University of S. Ala. v. The American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999). The removing party bears the burden of establishing the existence of federal jurisdiction. *See Allen v. R. & H. Oil &*

---

4. As part of the settlement agreement, The Tobacco Industry agreed to waive any and all claims against the State of Texas and to dismiss with prejudice any pending claims or actions against such persons or entities, including but not limited to *Philip Morris, Inc.*

*v. Morales,* Cause No. 95–14807 (120th Judicial Dist., Tex), a case brought by the industry questioning the Attorney General's authority to enter into a contingency fee arrangement with private counsel.

*Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995), *reh'g denied,* 70 F.3d 26 (5th. Cir.1995). It is with these principles in mind that we begin to ascertain this Court's jurisdiction.

### A. This Court Has Continuing Jurisdiction Over the Settlement Agreement

The first issue the Court must address is whether this Court has jurisdiction over the claim filed in state court. An analysis of the settlement agreement, the final judgment, and the case law establishes that this Court has continuing jurisdiction over the settlement agreement, the final judgment, and subsequently, the state law claim.

■ When a federal district court reserves its power to enforce a settlement, a breach of the agreement is a violation of the order, conferring on the court ancillary jurisdiction. *See Kokkonen v. Guardian Life Insur. Co. of America,* 511 U.S. 375, 380, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994). In *Kokkonen,* the Supreme Court recognized that a district court's explicit retention of jurisdiction over a settlement agreement, or its incorporation of that agreement into its final order, satisfies any jurisdictional concerns. *See id.* A breach of a settlement agreement in violation of a court order provides a court with ancillary jurisdiction. *See id.* The exercise of ancillary jurisdiction in these situations makes sense. The district court is in the best position to interpret its own orders and related issues. *See In re VMS Securities Litigation,* 103 F.3d 1317, 1321–22 (7th Cir.1996); *Hastert v. Illinois State Bd. of Election Comm'rs,* 28 F.3d 1430, 1438 (7th Cir.1993), *cert. denied,* 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). The court must also have the power to implement a settlement agreement between litigants in order to fulfill its role as supervisor of the litigation.

■ In its order approving the settlement agreement, the Court expressly retained jurisdiction over settlement related claims and enjoined the parties from proceeding in any other federal or state court. The Court's order provided:

It is further ordered that this Court shall have exclusive jurisdiction over the provisions of the Comprehensive Settlement Agreement and Release, this Order and the Final Judgment. All persons in privity with the parties, including all persons represented by the parties, who seek to raise any objections or challenges in any forum to any provision of this Judgment are hereby enjoined for proceeding in any other state or federal court.

Agreed Order Granting Joint Motion to Approve Settlement Agreement dated Jan. 22, 1998. The Settlement Agreement also provides for all disputes arising out of settlement related matters to be brought to this Court:

Settling Defendants and the State of Texas acknowledge that this court has jurisdiction over the subject matter of this action and over each of the parties hereto, and that this court shall retain jurisdiction for the purposes of implementing and enforcing the settlement agreement. The parties hereto agree to present any disputes under this settlement agreement, including *without limitation* any claims for breach or enforcement of this settlement agreement *exclusively* to this Court.

Settlement Agreement dated Jan. 22, 1998 at 3 (emphasis added).

Relators' claims, brought in the Texas Supreme Court, are objections to decisions reached by this Court in working out the settlement agreement. What Relators ultimately seek in the state court is a reversal of this Court's order allowing attorney fees, a matter over which this Court has expressly retained jurisdiction[5]. Relators'

---

**5.** It is also worth noting that this case involves outgrowth cases which are pending in this Court and address the same or similar issues. Exclusive jurisdiction in this Court also prevents the possibility of conflicting decisions issued by the federal and state courts and the ensuing federalism concerns.

attack on this Court's orders are quite explicit. For example, Relators attack the Attorney General's ability to enter into the contract with Private Counsel, an issue addressed in the settlement negotiations[6]. Relators also take issue with this Court's award of attorneys fees, stating; "so far as one can tell from its opinion, the court applied the Johnson factors without requesting or reviewing the billing records." Emergency Petition for Writ of Mandamus, No. 98–0089, (Tex.Sup.Ct. Jan. 30, 1998). Relators also claim that "$2.3 billion is an outrageous fee for the private attorneys hired as outside counsel in Texas." *Id.* at 8 n. 2. Relators attempt to characterize their claim as a state law claim, however, the issues raised are "inextricably intertwined" with issues previously determined by this Court and are therefore subject to its continuing jurisdiction. *See In re VMS*, 103 F.3d at 1322. Relators' attempts to bring this action in state court violates the Court's order prohibiting litigation of related issues in any other court, therefore, this Court has ancillary jurisdiction over Relators' claims.

**B. Res Judicata**

■ Although the issues before the state court have previously been addressed by this Court, *res judicata* does not provide a basis for removal. As a general rule, a state case may be removed to federal court only if federal jurisdiction is evident on the face of the plaintiff's well-pleaded complaint, *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A defense based on preclusion does not confer federal jurisdiction over this case. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). In *Rivet*, the Supreme Court held that claim preclusion by reason of a prior feder-

al judgment is a defensive plea that provides no basis for removal of state law claims based on the court's federal question jurisdiction. *Id.* 118 S.Ct. at 926. The *Rivet* decision reversed a number of courts who had found a basis for federal jurisdiction in a footnote in the Supreme Court's decision in *Federated Department Stores v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). In *Rivet*, the Court clarified that *Moitie* did not create an exception to the rule that a defendant cannot remove on the basis of a federal defense. *See Rivet*, 522 U.S. at 472, 118 S.Ct. at 926. Therefore, *res judicata* and the preclusive effect of the Court's prior order cannot provide a basis for removing the Writ filed in state court to this court.

**C. Removal is Proper Under The All Writs Act**

■ Removal to this Court, however, is proper under the All Writs Act, 28 U.S.C. § 1651[7]. The All Writs Act provides that "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions." The Supreme Court has made clear "the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." U.S. v. *New York Telephone Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). *Rivet*'s prohibition against the use of claim preclusion as a basis for removal does not prohibit federal jurisdiction under the All Writs Act. *See Rivet*, 118 S.Ct. at 926 n. 3 (courts continue to have the power to protect or effectuate their judgments). Al-

6. See Footnote four and related text.

7. As is suggested through the use of the same statutory language, "in aid of" exception to the Anti–Injunction Act was also intended to conform to the All Writs Act and grant authority to federal courts in order to protect

their jurisdiction. *See United States v. District of Columbia*, 654 F.2d 802, 809 n. 16 (D.C.Cir.1981) (quoting Reviser's note to § 2283); see also *Cinel v. Connick*, 792 F.Supp. 492, 496 (E.D.La.1992). Therefore, an analysis under either statute is applicable to the case a hand.

though the All Writs Act does not provide an independent basis for federal jurisdiction, *See Westinghouse Elec. Corp. v. Newman,* 992 F.2d 932, 937 (9th Cir.1993), it does provide supplemental jurisdiction when the underlying claim is already in federal court, the litigation before the Court presents extraordinary circumstances, and the Court is protecting or enforcing an explicitly ongoing order against relitigation of matters previously decided rather than determining the preclusive effect of a prior judgement on claims expected to be raised in a subsequent collateral proceeding. *See In re Agent Orange Product Liability Litigation,* 996 F.2d 1425, 1431 (2nd Cir.1993), *cert. denied sub nom., Ivy v. Diamond Shamrock Chemicals Co.,* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994). When these prerequisites are met, the All Writs Act permits a district court to enjoin actions in state court where necessary to protect its judgment, *See In re Baldwin-United Corp.,* 770 F.2d 328, 335 (2d Cir. 1985), or to remove actions from a state court directly to the implicated federal court and to subsequently bar litigation of the removed action. *See In re VMS,* 103 F.3d at 1323–26, *In re Agent Orange,* 996 F.2d at 1431. The Act also prevents attempts to evade removal by drafting a subsequent complaint so as to disguise the true nature of the lawsuit. *See Nowling v. Aero Services Intl.,* 734 F.Supp. 733, 737 (E.D.La.1990).

The All Writs Act has been applied by courts to provide an independent bases for removal in situations where the federal court needed to protect the integrity of its earlier judgment. *See In re Agent Orange,* 996 F.2d at 1430–31. The Second Circuit Court of Appeals upheld the use of the All Writs Act to remove two otherwise unremovable Texas class actions to federal court. In that case, the Texas class action plaintiffs brought suit in the Texas courts based on state law after a settlement was reached in the federal case. Plaintiffs argued that the federal court had no jurisdiction because their cause of action relied solely on state law and explicitly repudiated any reliance on federal law. The Second Circuit held these claims were properly removed directly to the federal court. *See id.* The Court found that the Texas class actions were attempts to revive the Agent Orange tort litigation that had already been resolved pursuant to a settlement agreement in which the district court had expressly retained jurisdiction. Of particular concern to the *Agent Orange* Court was the possibility that the state court may be second guessing issues that the federal court addressed in settling the case. The court stated:

> It is difficult to conceive of any state court properly addressing a victim's tort claim without first deciding the scope of the Agent Orange I class action and settlement. The court best situated to make this determination is the court that approved the settlement and entered the judgment enforcing it.

*Id.* at 1431.

Similarly, in *In re VMS,* 103 F.3d 1317, two separate district judges approved two class action settlements involving securities fraud lawsuits. In each lawsuit the district judge explicitly retained jurisdiction. After the settlement was final, a group of class members brought suit in a California state court alleging that they had been fraudulently induced into remaining in the class. Both courts granted the defendant's request to enforce the judgment finding the California class members were attempting an end run around the courts' final judgments. On appeal, the Seventh Circuit concluded the district court had jurisdiction over the California plaintiffs' claims because "when a lower court reserves its power to enforce a settlement, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist." *See id.* The Court acknowledged that allowing the California investors to maintain their separate suit would have had a substantial "deleterious effect" on settlement mechanisms. *Id.*

The Fifth Circuit has likewise taken the position that a federal court may exercise its jurisdiction where the state court judgment could contravene rights previously defined by the district court. *See Southwest Airlines v. Texas*, 546 F.2d 84, 90 (5th Cir.1977), *reh'g denied*, 550 F.2d 42 (1977), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *see also Nowling*, 734 F.Supp. at 738. Courts have relied on *Southwest Airlines'* reasoning in employing the All Writs Act "to avoid the real possibility of orders issuing from a state court that would be inconsistent with its own." *Nowling*, 734 F.Supp. at 738, (*citing Yonkers Racing Corporation v. City of Yonkers*, 858 F.2d 855, 863 (2nd Cir.1988)). For example, In *Nowling*, the district court precluded a petition filed in state court purporting to rely on state law only. The *Nowling* Court concluded the reasoning set forth in *Southwest Airlines* strengthens a district court's power to ensure that its orders are not obstructed even if lacking in federal character. *Id.* at 738.

 The protective power conferred on federal courts by the All Writs Act is not limited to the parties before the court, but rather extends, under the appropriate circumstances, "to all parties who are in a position to frustrate the implication of the court's order or the proper administration of justice." *New York Telephone*, 434 U.S. at 172, 98 S.Ct. at 372 (1977). In asserting jurisdiction over related matters, federal courts have typically used the All Writs Act in one of two ways. First, some courts rely on their jurisdiction over the original suit and issue an injunction prohibiting conflicting litigation. *See Hillman v. Webley*, 115 F.3d 1461, 1468 (10th. Cir.1997). Second, some courts have used the Act to remove an action from state court to federal court and subsequently bar the cause of action from being litigated in the state court. *Id.* Although the Fifth Circuit has not yet addressed this particular issue, a majority of circuits have held that a district court may exercise its authority under the All Writs Act to remove an otherwise unre-

movable case from state court and enjoin further proceedings in the state court when the state court action threatens the viability of its settlement agreement. *See NAACP v. Metropolitan Coun.*, 144 F.3d 1168 (8th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998), *Davis v. Glanton*, 107 F.3d 1044, 1047 n. 4 (3rd Cir.1997), *cert. denied*, 522 U.S. 859, 118 S.Ct. 159, 139 L.Ed.2d 103 (1997), *Sable v. General Motors Corp.*, 90 F.3d 171, 175 (6th Cir.1996), *In re VMS*, 103 F.3d at 1323–24, *In re Agent Orange*, 996 F.2d at 1433. The Tenth Circuit is alone in holding the federal district court overstepped the bounds of the All Writs Act when it depended on the Act as an independent source of jurisdiction to remove an otherwise unremovable state law claim from a parallel state action. *See Hillman*, 115 F.3d at 1469. However, even the Tenth Circuit approach recognizes a district court's authority to enjoin parties before it from pursuing conflicting litigation in the state court. *See id.*

The Court recognizes that the All Writs Act is not a "jurisdictional blank check to be used whenever the court deems it advisable." *In re VMS*, 103 F.3d at 1324. The All Writs Act is to be used in exceptional circumstances. Exceptional circumstances have been found by courts in circumstances similar to those in this case. In *Yonkers*, 858 F.2d at 864, the court concluded that the case before it was an exceptional circumstance where the parties in the removed action were in a position to frustrate the implementation of a previously entered federal consent decree. In *In re Agent Orange*, 996 F.2d at 1431, the court found exceptional circumstances to exist where the state court may be called on to decide the scope of a claim previously addressed in the federal court. In *In re VMS*, 103 F.3d at 1324, the court found exceptional circumstances to exist where the court explicitly retained jurisdiction over a complex case and the subsequent proceeding in state court may have a "deleterious effect" on the federal court's settlement.

The Fifth Circuit has also upheld the use of the Act to remove a case from state court when the state action attempted to relitigate matters decided in the federal court. *See Southwest Airlines*, 546 F.2d 84. Other Fifth Circuit cases allow a district court to rely on the All Writs Act to prevent conduct inhibiting a court's ability to manage a case before it. *See e.g., Williams v. McKeithen*, 939 F.2d 1100, 1104–05 (5th. Cir.1991), *ITT Community Devel. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir.1978), In *ITT*, the court's approach appears to limit the use of the All Writs Act to cases that have not yet ended in a judgment. *See id.* at 1359. The *ITT* Court was concerned with the district court's use of the All Writs Act in a rather routine case and in a manner that resulted in a harsh application of the district court's contempt power. The restrictive language of *ITT* should be viewed in the context in which the court was deciding that particular case. Additionally, other courts upholding the use of the All Writs Act by the district court involve conduct that occurred post judgment. *See, e.g., In re Agent Orange*, 996 F.2d 1425, *In re VMS*, 103 F.3d 1317, *Yonkers Racing*, 858 F.2d 855, *In re Baldwin*, 770 F.2d 328.

▮ The Texas Tobacco litigation is a complex multiparty litigation that is removable under the All Writs Act. Relators have not argued otherwise, but, instead suggest the use of the Act is improper because it is an extraordinary remedy not needed in the case at bar. Relators suggest that because the Court can chose to revisit the issue of attorneys fees, reliance on a special writ is not necessary. The Court disagrees. The issue presented here is whether this Court can preserve its jurisdiction to hear matters previously decided in this complex case. This Court had jurisdiction over the underlying suit which was brought by the State of Texas in this Court. After reaching a settlement, this Court enjoined relitigation of the issues in any other court. This Court also ruled on the issue of the attorneys' fees to be paid under the terms of the settlement. The Court clearly has an interest in protecting its previous order, prohibiting relitigation of matter previously decided, in protecting the interests of all the parties involved, and in fulfilling its role as supervisor of the court approved settlement agreement. The Court has the authority to remove this action because it explicitly retained jurisdiction to do so and because this case is the kind of extraordinary case that allows direct removal to this court under the All Writs Act.[8]

## III

### *The State's Immunity From Suit*

Having already decided this Court maintained jurisdiction over the enforcement of the Settlement Agreement, the Court may properly remove this matter unless prohibited by the Eleventh Amendment. Relators argue even if this Court has subject matter jurisdiction over the state law claim, the Eleventh Amendment deprives the Court of jurisdiction. The Court finds that the State of Texas waived its Eleventh Amendment immunity when it chose to invoke federal jurisdiction in bringing the underlying claim.

### A. Background of the Eleventh Amendment

The Eleventh Amendment provides, "the judicial power of the Unites States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against* one of the United States by Citizens of another State, or by Citizens or

**8.** Relators argue that Private Counsel removed the Writ from state court precluding the application of the All Writs Act to this case. Although Private Counsel filed pleadings with the Court invoking their right to remove this action to federal court, their actions do not prevent the Court from independently exercising its ability to remove this action. A party's attempt to relitigate in another forum will often first come to the attention of the court through the agrieved party's pleadings. *See In re Agent Orange*, 996 F.2d at 1430–1432.

Subjects of any Foreign State." U.S. Const. Amend. XI. (emphasis added). A state's freedom from suit also extends to suits brought by citizens of its own state. *See Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890). Sovereign immunity protects the state treasury from suits and protects a state from being brought before a federal court against its will. *See In re SDDS, Inc.*, 97 F.3d 1030, 1035 (8th Cir.1996). However, the Eleventh Amendment is not without limits. Congress may abrogate a state's immunity when acting pursuant to its authority to enforce § 5 of the Fourteenth Amendment. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). State officials may be sued as individuals in certain circumstances, *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Additionally, a state may always consent to suit in federal court. *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

**B. The State Waived its Sovereign Immunity**

A state's sovereign immunity is a personal privilege which may be waived at its pleasure by its appearance in a court of the United States. *See Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). A state may waive its Eleventh Amendment immunity by statute or by clear state conduct. *See Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 940 (Fed.Cir.1993). Generally, a federal court will find a waiver if either "the State voluntarily invokes federal jurisdiction or else if the State makes a clear declaration that it intends to submit itself to [federal] jurisdiction." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999) (citations omitted); *see also Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907 (1984) (a state can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it). The test for determining whether a state has consented to suit in a federal court is a "stringent one." *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985), *reh'g denied*, 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985). When a state initiates a claim in a federal court, it is the kind of clear state conduct that voluntarily waives its Eleventh Amendment immunity. *See Gunter v. Atlantic Coast Line R.R. Co.*, 200 U.S. 273, 284 & 292, 26 S.Ct. 252, 256 & 259, 50 L.Ed. 477 (1906); *see also Clark*, 108 U.S. at 437, 2 S.Ct. at 883 (a state's voluntary appearance in federal court is a voluntary submission to federal court jurisdiction); *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504 (1947) (state filing of a proof of claim in the reorganization court constituted a waiver); *Vecchione v. Wohlgemuth*, 558 F.2d 150, 158 (3d Cir.1977) (finding waiver by litigation of the state's rights); *New Jersey v. Gloucester Envtl. Management Serv.*, 923 F.Supp. 651, 654 (D.N.J.1995) (state's assertions of federal and state claims in federal court and its actively enlarging the number of defendants before the court constituted waiver).

A state may also waive its sovereign immunity by entering into a settlement agreement in federal court. *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir.1997), *cert. denied*, 524 U.S. 926, 118 S.Ct. 2319, 141 L.Ed.2d 694 (1998) (state waived its immunity by entering a compact that expressly stated that declaratory relief may be sought in United States District Court); *Colorado Health Care Ass'n v. Colo. Dept. of Soc. Serv.*, 598 F.Supp. 1400, 1406 (D.Colo.1984), *aff'd*, 842 F.2d 1158 (1988) (waiver found in an express stipulation entered into by the parties where state agency agreed to pay retroactive monetary awards).

The stringent standard for determining consent is met by the facts of this case. The State of Texas, acting as plaintiff, had the ability to choose its own forum

when it initiated suit against the tobacco industry. It voluntary submitted to federal jurisdiction when it sought to pursue its claims against the tobacco industry in this Court. The comprehensive settlement agreement signed nearly two years ago is also a clear indication of the State's intent to consent to federal jurisdiction.[9] In light of the State's actions and the controlling case law, the Court concludes that the State of Texas expressly waived its immunity from suit under the Eleventh Amendment.

## C. The Attorney General Waived the State's Sovereign Immunity.

 Relators argue that the State of Texas has not waived its sovereign immunity in the underlying case because the Attorney General is not authorized by Texas law to waive its immunity. The Court finds this argument unpersuasive. In determining whether the Attorney General has the authority to waive a state's Eleventh Amendment immunity, the Court must look to the "general policy of the state as expressed in its constitution, statutes, and decisions." *Magnolia Venture Capital,* 151 F.3d at 444. Relators argue that Tex. Gov't Code Ann. § 402.002 [10] explicitly protects the State from the Attorney General waiving its sovereign immunity. In support of their argument, Relators direct the Court to *In re Creative Goldsmiths of Wash., D.C., Inc.,* 119 F.3d 1140 (4th Cir.1997), *cert. denied sub nom., Schlossberg v. Maryland Comptroller of Treasury,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). In *Goldsmiths,* the Fourth Circuit found that language in a Maryland statute allowing the Attorney General to prosecute and defend both state and federal cases fell short of granting him the authority to waive the state's sovereign immunity. *Id.* In that case the court held that Maryland's *defense* of the case on the

merits in the district court did not constitute a waiver. *Id.* at 1149. However, the court took a very different approach when discussing claims pursued by a state plaintiff. The court remarked:

> The Eleventh Amendment, which applies only to suits 'commenced or prosecuted against one of the United States,' presents no bar to a state affirmatively entering a federal forum voluntarily to pursue its own interests. But it would violate the fundamental fairness of judicial process to allow a state to proceed in federal court and at the same time strip the defendant of valid defenses because they might be construed to be affirmative claims against the state. When a state authorized its officials voluntarily to invoke federal process In a federal forum, the state thereby consents to the federal forum's rules of procedure and may not invoke sovereign immunity to protect itself against the interposition of defense to its action.

*Id.* at 1148.

Likewise, in *Santee Sioux Tribe of Nebraska v. Nebraska,* 121 F.3d 427 (8th Cir.1997), also relied on by Relators, the court preserved Nebraska's immunity when the State's Attorney General appeared and defended a claim in federal court. The *Santee* Court held that the Nebraska Assistant Attorney General's conduct in answering a complaint and filing a counterclaim did not constitute a waiver of the State's sovereign immunity. In *Santee,* the Court was concerned with the situation where a state officer, acting within the scope of his ordinary affairs, may be held to have waived the state's sovereign immunity. That reasoning simply doesn't apply where the state sends its Attorney General to federal court to initiate a suit on its behalf. *See In re the Regents of the Univ. of Calif.,* 964 F.2d

---

9. Relators do not take issue with the results reached in the comprehensive settlement agreement, rather they seek only to prohibit this court from retaining jurisdiction over the related fee issues.

10. Tex. Gov't Code Ann. § 402.004 (West 1998) provides that "An admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state."

1128, 1135 ·(Fed.Cir.1992) *citing United States v. Peters,* 9 U.S. (5 Cranch) 115, 139, 3 L.Ed. 53 (1809) (Marshall, C.J.).

Relators' argument fails to distinguish between the test for consenting to jurisdiction by appearing and defending a case and waiver of sovereign immunity by initiating a suit in federal court. As to the former, there is no doubt that the Texas statute protects the State from the Attorney General's consent to suit when making a limited defense on behalf of the State in a federal court. *See Ford Motor Co.,* 323 U.S. at 468–69, 65 S.Ct. at 352–53; *Magnolia Venture,* 151 F.3d at 444; *Freimanis,* 654 F.2d at 1160. However, the question posed is different when the Attorney General voluntarily initiates a suit in federal court. By bringing this suit in federal court, the State invited the Court to adjudicate the case and controversy that the State put before it. *See Clark,* 108 U.S. at 447, 2 S.Ct. at 883. When the State brings suit in federal court, acting solely as a plaintiff, there simply is no Eleventh Amendment issue to address. *See Regents of Calif.,* 119 F.3d at 1564 (the Eleventh Amendment "applies to suits 'against' a state, not suits by a state."), *United States v. Peters,* 9 U.S. (5 Cranch) 115, 139, 3 L.Ed. 53 (1809) (Marshall C.J.) (the right given a state to sue in federal court does not implicate the Eleventh Amendment). Therefore, this suit only requires the Court to determine whether state law authorizes the Attorney General to proceed in federal court. *See In re Creative Goldsmiths,* 119 F.3d 1140, 1148 (4th Cir.1997) (to find consent a court must establish that the state consented to suit and the official is acting properly under state law).

The Attorney General is the State's attorney; he is authorized to prosecute and defend all actions in which the state is interested. *See* Tex. Gov't Code Ann. § 402.021 (West 1998). Here the Attorney General did more than simply enter an appearance to defend a suit on the merits.

The Attorney General filed suit on behalf of the state of Texas [11]. To the extent that the Attorney General is authorized to bring suit in federal court on behalf of the State of Texas, he is authorized to waive its sovereign immunity. *See In re Tamra M. Koehler,* 204 B.R. 210, 218 n. 13(Bankr.D.Minn.1997). A broader interpretation of the statute would mean that the state never waives its sovereign immunity even if it chooses to invoke the federal court's jurisdiction. A narrower interpretation would prevent the Attorney General from ever bringing suit on behalf of the State because doing so waives the State's sovereign immunity. To hold that the Attorney General did not waive the State's sovereign immunity in this instance would lead to absurd results and undermine the supremacy of federal law. Additionally, the State of Texas expressly consented to this Court's continuing jurisdiction more than two years ago when it signed the settlement agreement. No political body of the State of Texas has contested the underlying settlement in this case. The facts presented by this case simply do not implicate the Eleventh Amendment. Even if the Eleventh Amendment were applicable, the situation presented here meets the stringent test needed to find a waiver.

### D. The State Waived Immunity Regarding The Related Attorneys Fees Issues.

When a state voluntarily pursues its claim against another party in federal court, it voluntarily waives its Eleventh Amendment immunity and submits itself to the jurisdiction of the federal court to the full extent required for the determination of the litigation in question. *See Gardner v. State of N.J., 329* U.S. 565, 574, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947); *See also Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–84, 27 L.Ed. 780 (1883), *Ford Motor Co.,* 323 U.S. at 467 n. 12, 65 S.Ct. at 352 n. 12. By bringing its

---

11. In reaching its decision today, the Court need not and does not decide whether the Attorney General was authorized to enter into a contingency fee contract with Private Counsel.

claim in federal court, the State of Texas effectively waived its immunity from suit with respect to all claims arising out of the same transaction 'or occurrence. *See Clark,* 108 U.S. at 436, 2 S.Ct. at 883; *Gardner,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504; *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 946–47 (Fed.Cir.1993), *cert. denied sub nom., Regents v. Genentech, Inc. .,* 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994), *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967), *United States v. Johnson,* 853 F.2d 619, 621 (8th. Cir.1988). Relators' attempt to characterize their claim as an independent cause of action barred by the Eleventh Amendment. This is unconvincing. While the case was artfully crafted to include only a state cause of action to avoid this Court's jurisdiction, it is clear the issue presented by the petition involves attorneys fees granted in this case. The action pending in state court can best be characterized as a motion to reconsider this Court's previous order awarding attorneys' fees. This Court may properly address Relator's claims because they have the potential to severely frustrate decisions previously reached and are sufficiently related to the underlying litigation to be properly considered by this Court. *See Hankins v. Finnel,* 964 F.2d 853, 859 (8th Cir.1992), *cert. denied sub nom., Missouri v. Hankins,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). This Court's power to exercise jurisdiction over the attorneys' fees issue can be found in its retention of jurisdiction in the settlement agreement and in the power that resides in the federal court as ancillary to its powers to conduct the litigation. *See Southwest Airlines,* 546 F.2d at 90.

The Court finds support for this conclusion by examining *State of Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239 (8th Cir.1969), a case strikingly similar to the facts presented here. In that case, Iowa's Attorney General retained private counsel to adjudicate an antitrust suit on the state's behalf. The court held that the federal district court that heard the underlying antitrust action had supplemental jurisdiction over the attorneys' fees issues brought after private counsel was discharged by a new Attorney General. In that case, private counsel had earlier withdrawn from the case. The court permitted the withdrawal without conditioning its doing so on the payment of the fees owed to the private counsel. The court held that because the allowance of fees was incident to the primary action and within the ancillary jurisdiction of the federal court, the claim was not an independent action against the State of Iowa and did not implicate the Eleventh Amendment. *See id. at* 1244.

Because the claim pending in state court was an attorneys' fees issue stemming from the underlying litigation in this Court, removal to this Court is not barred by the Eleventh Amendment. *See Hankins,* 964 F.2d at 860 n. 10. Additionally, the removal of the attorneys' fee issue to the federal court does not evoke the federal court's power beyond that already consented to in the underlying settlement agreement. If this Court were denied jurisdiction, the State would receive the benefit of the settlement produced under this Court's supervision but be exempt from all subsequent actions that typically follow a complicated case like this one. If this were permitted the State would be in the enviable position of invoking the remedial power of the federal court while at the same time reserving the right to deny federal court jurisdiction when it no longer likes the results.

**E. The Court Can Grant the Relief Sought.**

██ Finally, Relators suggest this Court would be prohibited from granting the injunctive relief sought [12] in the state court based on *Pennhurst,* 465 U.S. at 106,

---

**12.** Relators ask the Texas Supreme Court to direct the Attorney General for the State of Texas to inform this Court that the Attorney General is without the power to enter into a contingent fee contract with Private Counsel.

104 S.Ct. at 907. In *Pennhurst* the Supreme Court held that federal courts cannot enjoin a state officer from violating state law. Relators' argument is unconvincing. First, *Pennhurst* stands for the proposition that a federal court cannot use the *Ex Parte Young* exception [13] to the Eleventh Amendment when asking a state official to conform to state law. When the state has consented to federal jurisdiction, there is no need to rely on the exception provided in *Ex Parte Young*. Second, under *Pennhurst*, "the determinative question is not the relief ordered, but whether the relief was ordered pursuant to state or federal law." *Brown v. Georgia Dept. of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989). The Eleventh Amendment does not prohibit a federal court from enjoining state officials on the basis of federal claims. *See Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir.1996). This Court's role as supervisor of the federal settlement agreement and its entry of an injunction preserving federal jurisdiction allow it to order injunctive relief to the extent needed to effect its judgments. *See, e.g., In re SDDS*, 97 F.3d 1030, 1035 (holding that the Eleventh Amendment does not bar a suit in federal court for injunctive relief to prohibit a state defendant from relitigating in a state court issues previously decided in a federal court). A federal court also has inherent power to investigate whether its judgment was falsely obtained and to do so by bringing before it all those who may be affected by the outcome of its investigation. *See Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 579, 66 S.Ct. 1176, 1179 (1946), *reh'g denied*, 329 U.S. 823, 67 S.Ct. 24, 91 L.Ed. 700 (1946) ("the inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question"), *See also Kokkonen*, 511 U.S. at 380, 114 S.Ct. at 1677 (the court has inherent authority to investigate and prosecute violations of a court's order). The Court's

inherent power allows it to determine the validity of the Attorney General's assertions that he had the authority to enter into the contingency fee agreement with Private Counsel. The Court's ability to direct a litigant before it is derived from it's position as supervisor of federal law claims. The fact that the State of Texas is the litigant before the Court in no way diminishes the Court's power over cases properly before it. The important sovereign immunity policies underlying the Eleventh Amendment were not designed to give procedural advantages to the State. *See In re Regents of Univ. of Calif.*, 964 F.2d at 1134.

## IV.

### Federalism Concerns

The State may waive sovereign immunity or decline to do so to whatever extent it likes; but once it has waived immunity, it may not invoke the Eleventh Amendment to rid itself of federal jurisdiction. *See People of Porto Rico v. Ramos*, 232 U.S. 627, 632, 34 S.Ct. 461, 462, 58 L.Ed. 763 (1914) (immunity from suit cannot be carried so far as to permit a state to reverse the action invoked by it, and to come in and go out of federal court at its will, the other party having no right of resistance to either step). The Eleventh Amendment does not prevent a state from entering a federal court voluntarily to pursue its own interests, but "once the state embarks down this route, it cannot run back to seek Eleventh Amendment protection when it does not like the result." *In re Platter*, 140 F.3d 676, 680 (7th Cir.1998); *See also Gunter*, 200 U.S. at 283–84, 26 S.Ct. 252 (when a state voluntarily becomes a party it cannot later escape by invoking the prohibitions of the Eleventh Amendment); *Hill v. Blind Indus. and Serv. of Md.*, 179 F.3d 754, 761 (9th Cir.1999) (same). The State of Texas may not turn the shield

---

**13.** The exception found in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), allows a federal court to grant prospective injunctive relief against a state offi-

cer. This exception to the state's immunity from suit is premised on the notion that a state officer acting contrary to law cannot be acting for the state.

granted it by the Eleventh Amendment into a sword simply by choosing to bring its suits in a federal court. Such conduct undermines the integrity of our federalism, wastes judicial resources, and usurps the finality of federal court rulings. This type of state court revision of federal judgments is prohibited by Article III of the Federal Constitution. *See e.g.*, Erwin Chermerinsky, Federal Jurisdiction 48 (3rd ed.1999). The result would undermine the finality of federal judgments. Such an effect does nothing to enhance the respect that federal and state governments must show each other in their parallel judicial roles [14]. The State of Texas, having invoked federal jurisdiction, is prohibited now from invoking the Eleventh Amendment to defeat this Court's jurisdiction. Therefore, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that Relators' motion to remand this matter to the Texas Supreme Court is **DENIED.**

**14.** An injunction to protect a federal order preserves rather than offends notions of federalism. *See Southwest Airlines*, 546 F.2d at 93.